**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL L. WILSON,

                              Plaintiff,

            - v -                                    Civ. No. 9:11-CV-0030
                                                          (MAD/RFT)

CHARLES KELLY, *Deputy Superintendent Security*,
*Great Meadow Correctional Facility*; PETER BESSON,
*Lieutenant, Great Meadow Correctional Facility*;
CRAIG GOODMAN, *Lieutenant, Great Meadow*
*Correctional Facility*; PAUL ZARNETSKI, *Lieutenant,*
*Great Meadow Correctional Facility*; NICHOLAS
DELUCA, *Sergeant, Great Meadow Correctional*
*Facility*; RICHARD VLADYKA, *Sergeant, Great Meadow*
*Correctional Facility*; DEBORAH BLACK, *Principal Store*
*Clerk, Great Meadow Correctional Facility,*
                              Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

MICHAEL L. WILSON
Plaintiff, *Pro Se*
03-B-0569
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. ERIC T. SCHNEIDERMAN                  CATHY Y. SHEEHAN, ESQ.
Attorney General of the State of New York  Assistant Attorney General
Attorney for Defendants
Department of Law
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

Michael L. Wilson, a New York State prison inmate proceeding *pro se* and *in forma pauperis,* commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his civil rights under the First and Fourteenth Amendments to the United States Constitution. *See* Dkt. 1, Compl. Plaintiff seeks monetary damages along with declaratory and injunctive relief. *Id.* at ¶ 2. Defendants now move for dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 25. Plaintiff opposes the Motion. Dkt. No. 27. For the reasons that follow, we recommend that Defendants' Motion be **granted in part and denied in part.**

## I. BACKGROUND

### A. Facts

The following facts are derived from the Complaint, which must be deemed true in accordance with the standard of review on a motion to dismiss. *See infra* Part II.A. Plaintiff is presently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Great Meadow Correctional Facility Honor Block, which serves as the location of the events giving rise to this Complaint. Compl. at ¶¶ 5 & 17. Plaintiff describes himself as "a devoted practicing Muslim, who attends religious services every Friday afternoon, including all religious classes." *Id.* at ¶ 15. Further, Plaintiff was an Inmate Liaison Representative for an unspecified period of time, *id.* at ¶ 15, and currently works in the facility's metal furniture shop, *id.* at ¶ 17.

Plaintiff submitted a letter, dated October 25, 2009, to Thomas LaVally, Superintendent of Great Meadow (not a Defendant in this action), concerning "harassment and discrimination against

the Muslim faith" by staff members at Great Meadow.  Compl. at Ex. A.  In this letter, among other events, he recounts: (1) an October 24, 2009 incident where a sergeant (not a Defendant in this action) stopped him while he was on his way to Arabic/Salat class and advised him that his pants were in violation of prison regulations because they were too short, (2) harassment and discrimination suffered by Muslim inmates, and (3) his assault by Lieutenant Sawyer in the sergeant room while Officer Green (not a Defendant in this action) watched.[1]  *Id.*  Plaintiff also states in the letter that he "can start things also" and that "I don't really want to start anything but if I'm force[d] to I will."  *Id*.

Plaintiff received an inmate misbehavior report, authored by Defendant DeLuca, regarding his letter as well as refusing to be interviewed by Defendant DeLuca about his comment that he "can start things also."  *Id*. at Ex. B.  Plaintiff states that he did not report to DeLuca to be interviewed because he feared for his safety as the Sergeant has a history of assault on inmates.  *Id*. at ¶ 24.

Defendant Zarnetski held a hearing on this misbehavior charge.  *Id*. at ¶ 25.  Plaintiff alleges that Defendant Zarnetksi was biased during the hearing and repeatedly referred to Plaintiff as "nigger," "stupid," and "asshole."  *Id*. at ¶ 25.  Plaintiff also objected to Defendant Goodman being present at the hearing as an observer.  *Id.* at ¶ 25.

Plaintiff was found guilty and sentenced to thirty days of keeplock confinement.  *Id.* at ¶ 27.  Initially, this misbehavior report determination was upheld by Defendant Deputy Superintendent for Security Kelly.  *Id.* at Ex. C.  However, on February 12, 2010, Defendant Kelly reversed the hearing determination and expunged Plaintiff's record because the hearing was not completely recorded, per

---

[1] Plaintiff did not report this incident.  Plaintiff later discovered that Lieutenant Sawyer was actually Defendant Lieutenant Craig Goodman.  *See* Compl. at ¶ 16 & Ex. A.

established procedure.[2]  Compl. at  Ex. E.

Plaintiff was issued another misbehavior report, dated February 5, 2010, charging him with altering state property, giving false statements or information, and refusing a direct order.  *Id.* at ¶ 33 & Ex. G.  Defendant Black indicated on the misbehavior report, "per Hearing Lt. Goodman,  this will be I/M Wilson's third time being cited for altered clothing.  Also I/M has been given numerous direct orders from staff members not to wear hemmed pants that are hemmed incorrectly/illegally." *Id*. at Ex. G.   During the hearing on this misbehavior report, Plaintiff objected to Defendant DeLuca's testimony as biased.  *Id.* at ¶ 35.  Plaintiff was found guilty on all charges and sentenced to fifteen days of keeplock confinement.  *Id.* at Ex. H.  Plaintiff's February 23, 2010 FOIL request for a copy of the tape of the hearing was denied as "tape expunged/not available."  *Id*. at Ex. L. Plaintiff alleges that the hearing officer was biased and that the tape would have demonstrated that bias.  *Id*. at ¶ 37.  On February 24, 2010, Defendant Kelly also reversed and expunged this hearing disposition from Plaintiff's record.  *Id*. at Ex. K.

Plaintiff missed seven religious services as a result of combined confinement of forty-five days, stemming from the two misbehavior hearing determinations discussed herein.  *Id*. at ¶ 15. Furthermore, for two years, Plaintiff volunteered as an inmate cook during the Muslim Ramadan Id festival.  *Id.* at ¶ 18.  Plaintiff had also worked in the kitchen "as an assigned program without incident."  *Id.*  On or about July 30, 2010, Defendant Vladyka removed Plaintiff's name from the kitchen Ramadan assignment list.  *Id.* at ¶ 20.  Prior to this, Defendant Vladyka made comments about Plaintiff filing complaints and grievances against staff.  *Id.*  Defendant Vladyka determined

---

[2] On January 26, 2010, Plaintiff filed a FOIL request seeking the tape recording of the hearing; the FOIL request was denied because there was no such recording.  *See* Compl. at Ex. D.

Plaintiff to be a security risk because of his behavior.  *Id.* at ¶ 21.  Plaintiff filed a grievance regarding this.  *Id.*

### B. Procedural History

Plaintiff filed a §1983 Complaint together with a Motion to Proceed *In Forma Pauperis* ("IFP").  Dkt. Nos. 1 & 2.  By a Decision and Order, dated May 5, 2011, Honorable Mae A. D'Agostino, United States District Judge, reviewed those filings and granted Plaintiff permission to proceed with this matter IFP and accepted Plaintiff's Complaint for filing. Dkt. No. 7.  However, pursuant to 28 U.S.C.§1915(e)(2)(B) and 28 U.S.C. §1915A(b), Judge D'Agostino, *sua sponte*, dismissed Plaintiff's claims against Defendant Scott Woodward, without prejudice.  Because the claims against Defendant Woodward did not constitute a constitutional violation nor result in a denial of access to the courts,  Judge D'Agostino determined that Plaintiff had failed to state a claim against Defendant Woodward.  *See generally id.*

### II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters

alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] solely relies and which is integral to the complaint' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*).[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

---

[3] By its opinion in *Bell Atl. Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 561 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 563.

556 U.S. at 678.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

### B. First Amendment Claims

#### 1. Retaliation

Plaintiff's claims of retaliation against the Defendants originate with his letter to then-Superintendent LaVally as well as his written grievances and complaints.  The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988).  Claims of retaliation, like those asserted by Plaintiff, find their roots in the First Amendment.  Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004).

The Second Circuit has stated that courts must approach prisoner retaliation claims "with

skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To state a claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492); *see also Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002).

In situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendants to show that they would have taken the same action absent the retaliatory motive. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (cited in *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997)); *see also Gayle v. Gonyea*, 313 F.3d at 682 (defendant may successfully meet this burden of justification with regard to a particular punishment by demonstrating that "plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report" (internal quotation marks and citations omitted)).

Defendants seek dismissal of the retaliation claims against them for failure to state a claim upon which relief can be granted. Dkt. No. 25-1, Defs.' Mem. of Law at p. 11. Plaintiff submits that

Defendant DeLuca retaliated against him by issuing a false misbehavior report that was dated October 26, 2009, the day following Plaintiff's letter of complaint to then-Superintendent LaVally.[4] Dkt. No. 27, Pl.'s Resp. at p. 3; Compl. at ¶ 22.  Plaintiff's filing of the October 25, 2009 complaint was a protected activity and thus satisfies the first prong of a retaliation claim.  Next, the issuance of the misbehavior report, which Plaintiff alleges was false, can be considered advance action, satisfying the second prong.  The issuance of a false misbehavior report can constitute adverse action for purposes of a retaliation claim.  *See Gill v. Pidlypchack*, 389 F.3d at 384 (filing a false misbehavior report that resulted in three weeks of keeplock confinement against was sufficient for adverse action); *see also Gayle v. Goynea,* 313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance states a claim under § 1983.") (citation omitted)).  Finally, because this misbehavior report was dated October 30, 2009, only days after Plaintiff's October 25, 2009 letter of complaint, a causal connection could exist between the adverse action and Plaintiff's complaint to then-Superintendent LaVally.

Although Defendants deny that the misbehavior report was issued as retaliation, they state that even if this was retaliation, there is a valid reason for its issuance.  Defs.' Mem. of Law at p. 8. Defendants argue that Plaintiff admits that he engaged in the violation for which he was disciplined. Specifically, Plaintiff admits writing the letter of complaint and stating, that he "can start things also" and "I don't really want to start anything but if I'm force to I will."  Compl. at Ex. A; Defs.' Mem. of Law at p. 8.   Defendants indicate that these written statements were threats for which

---

[4] Paragraph 22 of the Complaint indicates that the misbehavior report was dated and written on October 26, 2009.  However, the misbehavior report, which is attached to the Complaint as Exhibit B is dated October 30, 2009 and indicates that the date of the incident is October 26, 2009.

Plaintiff was disciplined.  Defs.' Mem. of Law at p. 8.  However, adhering to the standard of review in a motion to dismiss whereby Plaintiff's Complaint is deemed true, Plaintiff has set forth sufficient detail to allege a retaliation claim against Defendant DeLuca.  Defendants' Motion to Dismiss the retaliation claim against Defendant DeLuca is **denied.**

Plaintiff alleges a retaliation claim against Defendant Kelly but fails to provide facts.  Without supporting facts, this retaliation claim serves only as a conclusory statement.  Moreover, because Defendant Kelly ultimately reversed both of the misbehavior determinations, no adverse action can be construed as taken by Defendant Kelly.  Therefore, the retaliation claim against Defendant Kelly should be **dismissed**.

Plaintiff alleges that Defendant Black retaliated against him for filing his grievance/complaint and practicing his religion.  Comp. at ¶ 33.  Giving all deference to this *pro se* litigant, this Court determines that Plaintiff has not set forth sufficient facts establishing a retaliation claim against Defendant Black.  He fails to connect his activity of filing complaints/grievances and practicing his religion to the misbehavior report filed by Defendant Black.  As such, the claim against Defendant Black should be **dismissed**.

Plaintiff's retaliation claim against Defendant Goodman also fails.  Although Plaintiff's filing of a complaint is a protected activity, Plaintiff does not satisfy the second prong.  Plaintiff claims only that Defendant Goodman retaliated against him by taking an active role at the misbehavior hearing.  Compl. at ¶ 54.  He states that Defendant Goodman was present at the first hearing but does not specify Goodman's involvement, if any, in the misbehavior hearing process. Compl. at ¶ 25.  Plaintiff's failure to allege an adverse action taken by Defendant Goodman nullifies the retaliation claim against him, and therefore it should be **dismissed**.

*-10-*

Plaintiff's retaliation claim against Defendant Hearing Officer Zarnetski centers around Defendant Zarnetski's decision on the first misbehavior report.  Plaintiff meets the first prong with the complaint letter to LaVally.  However, Plaintiff's allegations of Zarnetski's: (1) bias, (2) failure to record the hearing, (3) use of racial slurs against Plaintiff, and (4) issuance of guilty verdict and thirty-day keeplock sentence, fail to meet the remaining prongs of a retaliation claim.  *See Dorsey v. Fisher*, 2012 WL 811350 *1-2 (2d Cir. 2012) (holding that retaliatory verbal abuse without physical harm and without "any specificity to suggest that they would deter a prisoner of ordinary firmness from exercising his constitutional rights" did not consist of adverse action, and that defendant's imposition of 75 days solitary confinement where inmate filed a grievance against different defendant did not provide an inference of causal connection between the act and inmate's protected speech).  In light of this, that portion of Defendants' Motion seeking to having the retaliation claim against Defendant Zarnetski dismissed should be **granted.**

Plaintiff's retaliation claim against Defendant Besson also fails to meet the requirements for a retaliation claim.  Again, Plaintiff has met the first prong of the retaliation test with his letter to then-Superintendent LaVally.  However, Plaintiff has not alleged that Defendant Besson knew of the existence of the October 25, 2009 letter to LaVally, nor has Plaintiff alleged enough to demonstrate that Defendant Besson's actions were improperly motivated.  From the facts alleged, it appears that Defendant Besson issued a guilty determination on a misbehavior report that was issued almost four months after the letter-complaint Plaintiff wrote to LaVally.  As such, the retaliation claim against Defendant Besson should be **dismissed**.

Lastly, Plaintiff alleges that on July 30, 2010, Defendant Vladyka retaliated against him by removing him from kitchen Ramadan duty, and he alleged false safety concerns with respect to

Plaintiff.  Compl. at ¶¶ 20 & 53; Pl.'s Resp. at p. 4.  Plaintiff volunteered as an inmate cook during the Muslim Ramadan Id festival for two years and also worked in the kitchen "as an assigned program without incident."  Compl. at ¶ 18.  Courts in the Northern District have held that removal from job assignment can constitute adverse action.  *See Vega v. Lareau*, 2010 WL 2682307, at *8 (N.D.N.Y. March 16, 2010), *Rep.-Rec. adopted by* 2010 WL 2682289*; Gill v. Calescibetta*, 2009 WL 890661, at *11 (N.D.N.Y. Mar. 11, 2009), *Rep.-Rec. adopted by* 2009 WL 890661.  Additionally, Plaintiff's retaliation claim fails because the allegations are insufficient to meet the third prong.  Even if Vladyka's conduct constituted an adverse action, Plaintiff fails to connect this alleged adverse action with a particular protected activity.  Notwithstanding Plaintiff indicating that he filed numerous grievances and complaints between October 2009 and August 2010, he does not provide specific details about how these grievances and complaints were causally connected to the action of removal from Ramadan kitchen duty on July 30, 2010.  Compl. at ¶ 19.  As such, the retaliation claim against Defendant Vladyka should also be **dismissed.**

### 2. Freedom to Practice Religion

The First Amendment of the United State Constitution guarantees the right to free exercise of religion. U.S. CONST. Amend. I.  Prisoners maintain some measure of constitutional protection afforded by the Free Exercise Clause of the First Amendment.  *Pell v. Procunier*, 417 US. 817, 822 (1974).  However, these constitutional protections are balanced against the "interests of prison officials charged with complex duties arising from administration of the penal system."  *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990); *see also Pell v. Procunier,* 417 U.S. at 822.   "A regulation that burdens a protected right passes constitutional muster 'if it is reasonably related to legitimate penological interests.'"  *Salahuddin v. Goord,* 467 F.3d 263 (2d Cir. 2006) (quoting

*O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

Reading Plaintiff's *pro se* Complaint liberally, he appears to allege a First Amendment Free Exercise claim.  Plaintiff clearly is afforded some First Amendment protection to freely exercise his Islamic faith.  Compl. at ¶¶ 15 & 47.  Plaintiff claims that he missed a total of seven religious services because of his combined forty-five day keeplock confinement.  However, Plaintiff has not alleged that the inability to attend religious services while on keeplock presented a substantial burden to his religious beliefs.  *See Salahuddin v. Goord*, 467 F.3d at 274-275 ("prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.").  Without making this threshold showing of a substantial burden on his religious beliefs, Plaintiff cannot maintain a free exercise claim against the Defendants.

Nonetheless, this Court need not determine if there is a constitutional violation regarding this issue because Plaintiff has not alleged any personal involvement on the part of the Defendants here.  The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement."  *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

in one or more of the following ways: 1) actual direct participation in the
constitutional violation, 2) failure to remedy a wrong after being informed through
a report or appeal, 3) creation of a policy that sanctioned conduct amounting to a
constitutional violation, or allowing such a policy or custom to continue, 4) grossly
negligent supervision of subordinates who committed a violation, or 5) failure to act
on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d 865, 873)
(further citations omitted).

Plaintiff fails to allege facts to demonstrate that any of the Defendants were personally
involved in him missing religious services. Although Defendants Zarnetski and Besson rendered
the keeplock confinement punishments, which ultimately resulted in Plaintiff missing seven
religious services, Plaintiff has not alleged that they were personally involved in him missing these
religious services. Plaintiff has not alleged that any of the Defendants were responsible for the
creation or implementation of the policy that inmates in keeplock confinement were not allowed to
attend religious services. Without the element of personal involvement, no free exercise claim can
be maintained against these Defendants.

### 3. Conspiracy

Plaintiff claims that Defendant DeLuca acted on his own, or at "the behest of" Defendant
Kelly, to violate Plaintiff's First Amendment rights. Compl. at ¶ 48. Plaintiff also claims that
Defendant Black acted alone or "at the behest of" Defendant Goodman to violate Plaintiff's First
Amendment rights. Compl. at ¶ 55. In his Response, Plaintiff also alleges Defendants Besson,
Black, DeLuca, Goodman, Kelly, and Zartnetski all conspired to have him confined to his cell and
removed from honor block. Pl.'s Resp. at p. 5.

To support a conspiracy claim under §1983, a plaintiff must demonstrate (1) an agreement
between two or more state actors or a state actor and private party; (2) to act in concert to inflict an

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002).  In addition, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of New York* , 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation marks, and internal alterations omitted.).   "While 'conclusory allegations' of a §1983 conspiracy are insufficient, *Dwares v. City of New York* 985 F.2d 94, 99-100 (citing cases), we have recognized that such 'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn v. Culbertson* 200 F.3d 65 (2d Cir. 1999) (quoting *Rounseville v. Zahl* 13 F.3d 625, 632 (2d Cir. 1994)).

Reading Plaintiff's *pro se* Complaint with the required liberality and taking the allegations as true, Plaintiff has not pled sufficient facts to support a claim of conspiracy pursuant to § 1983 amongst the Defendants, as he fails to allege an agreement here.  Plaintiff alleges neither direct nor circumstantial evidence of a conspiracy sufficient to survive this Motion to Dismiss.  Plaintiff's allegations are speculative and conclusory at best, and therefore all conspiracy claims should be **dismissed.**

### C. Due Process Claims

Plaintiff asserts that Defendants Besson and Zarnetski violated his right to due process "violating established procedure as outlined in 7 NYCRR V, by not conducting a fair and impartial hearing."  Comp. at ¶¶ 50 & 51.  Plaintiff claims violations of 7 NYCRR § 253 and 7 NYCRR § 250.2 (f), and NYS Correction Law § 138, which outlines disciplinary hearing procedures.  Pl.'s

Resp. at p. 6.

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed [ ] the sentence . . . an unexpected manner [.]" *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 37 F. Supp. 2d 162, 167 (N.D.N.Y.), *vacated and remanded on other grounds* by 238 F.3d 223 (2d Cir. 2001) (citing *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996)). In *Sandin*, the Supreme Court ruled that the Constitution did not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." 515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d at 225 (citing *Sandin v. Conner*, 515 U.S. at 484); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999). Thus, a prisoner asserting that he was denied due process in connection with segregated confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed such an "atypical and significant hardship." *See Sandin v. Conner*, 515 U.S. at 484 (holding  an inmate has no constitutional right to any procedural safeguards unless the deprivation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").

Factors relevant to an analysis of what constitutes an atypical and significant hardship include "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation compared to discretionary confinement." *Spaight v. Cinchon*, 1998

WL 167297, at *5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)); *see also Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004) (stating that in assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical" (citation omitted)). Though the length of the confinement is one guiding factor in a *Sandin* analysis, the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (citations omitted). Nevertheless, the Court of Appeals has stated that "[w]here the plaintiff was confined for an intermediate duration – between 101 and 305 days – development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d at 64-65 (quoting *Colon v. Howard*, 215, F.3d 227, 232 (2d Cir. 2000)); *see also Hanrahan v. Doling*, 331 F.3d 93, 97-98 (2d Cir. 2003) ('[W]here the actual period of disciplinary confinement is insignificant or the restrictions imposed relatively minor, such confinement may not implicate a constitutionally protected liberty interest."); *Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir. 2000) (noting that segregative sentences of 125-288 days are "relatively long" and therefore necessitate "specific articulation of . . . factual findings before the district court could properly term the confinement atypical or insignificant"). Accordingly, the court must "make a fact-intensive inquiry" that would examine the actual conditions of confinement within SHU. *Palmer v. Richards,* 364 F.3d at 65 (citations omitted); *see also Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997). If the conditions of confinement are undisputed, a court may decide the *Sandin* issue as a matter of law. *Palmer v. Richards*, 364 F.3d

*-17-*

at 65.  If, however, normal conditions of SHU exist, but the period of confinement is longer than the intermediate duration, then it would constitute a significant departure from ordinary prison life requiring the protection of procedural due process under Sandin.  *Id.*

Neither the fifteen day keeplock confinement sentence nor the thirty day keeplock confinement sentence imposed upon Plaintiff constitutes a significant or atypical hardship of prison life. *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir. 1999); *see also Ayers v. Ryan* 152 F.3d 77, 83 (2d Cir. 1998) ("Whether or not a period of disciplinary confinement amounts to an atypical and significant hardship is a fact-intensive inquiry[.]").   The Second Circuit has suggested that confinement for a period of less than 101 days would not constitute an atypical and significant hardship.  *See Colon v. Howard,* 215 F.3d 227. 231-32 (2d Cir. 2000).  In light of this, the total confinement of 45 days was not an atypical and significant hardship.

Similarly, Plaintiff's inability to attend seven Muslim religious services, loss of his honor block cell status and loss of wages, which all occurred because he was held in keeplock confinement, do not constitute deprivation of a liberty interest.  *See Arce v. Walker,* 139 F.3d 329, 337 (2d Cir. 1998) ("deprivation of access to communal religious services, among others, did not implicate a state-created liberty interest" (citing *Farmer v. Hawk*, 1996 WL 525321, at *6 (D.D.C. Sept. 5, 1996))).  As such, the due process claims against Defendants Besson and Zarnetski should be **dismissed.**

### D. Qualified Immunity

Defendants assert that they are entitled to qualified immunity with respect to Plaintiff's claims seeking damages against them.

The doctrine of qualified immunity shields public officials from suit for conduct undertaken

in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988). Qualified immunity analysis involves a two-step sequence. A court must decide (1) whether facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so whether that right was clearly established at the time of defendant's alleged misconduct. *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). Recently, the United States Supreme Court held that courts need not first determine whether facts alleged by a plaintiff make out a violation of constitutional right, receding from *Saucier v. Katz. Pearson v. Callahan*, 555 U.S. 223 (2009).

Generally, however, "the defense of qualified immunity cannot support the grant of a . . . 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983); *see also McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quoting *Green*). An exception to this general rule exists where the complaint itself sets up, on its face, the qualified immunity defenses; in such an occasion, dismissal for failure to state a claim would be appropriate. *Roniger v. McCall*, 22 F. Supp. 2d 156, 162 (S.D.N.Y. 1998) (citing *Green v. Maraio*, 722 F.2d at 1019); *see also McKenna v. Wright*, 386 F.3d at 435.

The Second Circuit has further held that qualified immunity "turns on factual questions that cannot be resolved at [the motion to dismiss] stage of proceedings." *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002). On the face of the Complaint, there are no facts that would indicate that qualified immunity is ripe for discussion. For these reasons, any adjudication as to the applicability of the qualified immunity affirmative defense would be premature since "[r]esolution

of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004).   Given this, Defendants' assertion of the qualified immunity defense should be **denied**.

### E. Eleventh Amendment Bar to Suit

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890).  "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)).  Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984).  To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir. 1993), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a

*-20-*

government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint.   The Second Circuit has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be the subject of injunctive or declaratory relief in federal court."   *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke v. New York State Dep't of Corr. Servs.*, 915 F. Supp. at 540. Accordingly, Plaintiff's claims against Defendant DeLuca in his official capacity should proceed only with respect to injunctive and declaratory relief.

### F. Protective Order Barring Discovery

Pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, Defendants move for a protective order staying discovery pending the Court's determination of this motion.  Rule 26(c)(1), in relevant part, provides that

> [a] party or person from whom discovery is sought may move for a protective order in the court where the action is pending . . .The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery.
>
> FED. R. CIV. P. 26(c)(1); *see also Spencer Trask Software and Info. Servs., LLC v.*

*RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (granting stay of discovery pending determination of motion to dismiss where court found defendants presented substantial arguments for dismissal of many if not all of the claims in the lawsuit); *United States v. Cnty. of Nassau,* 188 F.R.D. 187, 188-89 (E.D.N.Y. 1999) (granting stay of discovery during pendency of a motion to dismiss where the "interests of fairness, economy and efficiency . . . favor[ed] the issuance of a stay

of discovery," and where the plaintiff failed to claim prejudice in the event of a stay).

Defendants' request to stay discovery should be denied as moot. Discovery has not yet commenced as the Defendants have not yet filed and served an answer, and the Court has not yet issued a Discovery and Scheduling Order.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss be **granted in part and denied in part** as follows:

1) **GRANTED,** as to First Amendment retaliation claims against Defendants Kelly, Besson Goodman, Zarnetski, Vladyka, and Black;

2) **GRANTED,** as to Due Process claims against Defendants Zarnetski and Besson;

3) **GRANTED,** as to First Amendment free exercise claims against Defendants Kelly, Besson, Goodman, Zarnetski, DeLuca, Vladyka, and Black;

4) **DENIED,** as to First Amendment retaliation claims against Defendant DeLuca;

5) **GRANTED,** as to the conspiracy claims against Defendants Kelly, Besson, Goodman, Zarnetski, DeLuca, Vladyka, and Black;

**RECOMMENDED**, that if the above recommendations are adopted, then Defendants Kelly, Besson, Goodman, Zarnetski, Vladyka , and Black should be **dismissed** from this action as there are no plausible claims stated against them; and it is further

**RECOMMENDED,** that if the above recommendations are adopted, then Defendant DeLuca should be ordered to file an answer in response to the Complaint and this matter should proceed to the discovery phase on the remaining claims; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Date:   June 22, 2012
          Albany, New York

Randolph F. Treece
U.S. Magistrate Judge