**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL L. WILSON,**

                                        **Plaintiff,**

    **vs.**                                                                **9:11-cv-00030**
                                                                        **(MAD/RFT)**

**CHARLES KELLY, Deputy Superintendent**
**Security. Great  Meadow Correctional Facility,**
**in his individual and official capacity; PETER**
**BESSON, Lieutenant, Great Meadow Correctional**
**Facility, in his individual and official capacity;**
**CRAIG GOODMAN, Lieutenant, Great Meadow**
**Correctional Facility, in his individual and official**
**capacity; PAUL ZARNETSKI, Lieutenant, Great**
**Meadow Correctional Facility, in his individual**
**and official capacity; NICHOLAS DELUCA,**
**Sergeant, Great Meadow Correctional Facility, in**
**his individual and official capacity; RICHARD**
**VLADYKA, Sergeant, Great Meadow Correctional**
**Facility, in his individual and official capacity;**
**DEBORAH BLACK, Principal Store Clerk, Great**
**Meadow Correctional Facility, in her individual and**
**official capacity,**

                                        **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**MICHAEL L. WILSON**
**03-B-0569**
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**                 **CATHY Y. SHEEHAN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On January 5, 2011, Plaintiff, a New York State prison inmate, commenced this civil rights action, pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Plaintiff claims that Defendants violated his rights under the First and Fourteenth Amendments to the United States Constitution. *See id.* Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. *See id.* at ¶ 2.

On September 29, 2011, Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 25. On June 22, 2012, Magistrate Judge Treece issued a Report-Recommendation and Order recommending that the Court grant-in-part and deny-in-part Defendants' motion to dismiss. *See* Dkt. No. 29.

Currently before the Court are Plaintiff's objections to Magistrate Judge Treece's Report-Recommendation and Order. *See* Dkt. No. 31.

**II. BACKGROUND**

**A.      Factual background**

Plaintiff is presently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Great Meadow Correctional Facility ("Great Meadow"), which serves as the location of the events giving rise to this complaint. *See* Dkt. No. 1 at ¶¶ 5, 17. Plaintiff describes himself as "a devoted practicing Muslim, who attends religious services every Friday afternoon, including all religious classes." *See id.* at ¶ 15. Moreover, Plaintiff was an Inmate Liaison Representative for an unspecified period of time and currently works in Great Meadow's metal furniture shop. *See id.* at ¶¶ 15, 17.

On or about October 25, 2009, Plaintiff submitted a letter to Thomas LaValley, Superintendent of Great Meadow, concerning "harassment and discrimination against the Muslim faith" by staff members at Great Meadow.  *See* Dkt. No. 1 at Exhibit "A."  In this letter, Plaintiff recounts, among others, the following events: (1) an October 24, 2009 incident in which a sergeant, who is not a defendant in this action, stopped him while he was on his way to Arabic/Salat class and advised him that his pants were in violation of prison regulations because they were too short; (2) harassment and discrimination suffered by Muslim inmates; and (3) Lieutenant Sawyer's assault on Plaintiff in the sergeant room while Officer Green, who is not a defendant in this action, watched.  *See id.*[1]  In this letter to Superintendent LaValley, after informing him of the various problems he has with the staff at Great Meadow, Plaintiff states that "I would like for you to address this matter because I can start things also."  *See id.*  Plaintiff proceeds to state that "I really don't want to start anything but if I'm force[d] to I will."  *See id.*  Finally, in his letter, Plaintiff makes the following request: "I ask that you respond back or speak with me whenever you can . . . but once again, I ask that you clear this up because I really don't want to take this out [of] the facility without giving you the chance to correct the matter first."  *See id.*

On October 31, 2009, Plaintiff received a misbehavior report, authored by Defendant DeLuca, regarding the "threat" made in his letter and also for refusing a direct order when Plaintiff refused to be interviewed by Defendant DeLuca about his comment that he "can start things also."  *See id.* at Exhibit "B."  Plaintiff claims that he did not report to Defendant DeLuca

---

[1] Plaintiff did not report this incident and later found out that "Lieutenant Sawyer" is actually Defendant Goodman.

because he feared for his safety because Defendant DeLuca "has a history of assaults on inmates." *See id.* at ¶ 24.

Defendant Zarnetski held a disciplinary hearing on the misbehavior report. *See id.* at ¶ 25. Plaintiff claims that Defendant Zarnetski was biased during the hearing and repeatedly referred to him as "nigger," stupid," and "asshole." *See id.* Plaintiff also objected to Defendant Goodman being present at the hearing as an observer because he was not a witness or a party to the misbehavior report. *See id.*

Defendant Zarnetski found Plaintiff guilty of issuing a threat but not guilty of refusing to obey a direct order. *See id.* at ¶ 27 and Exhibit "C." Initially, the misbehavior report determination was upheld by Defendant Kelly, the Deputy Superintendent for Security. *See id.* at Exhibit "C." On February 12, 2012, however, Defendant Kelly reversed the hearing determination and expunged Plaintiff's record because the hearing was not completely recorded, per established procedure. *See id.* at Exhibit "E."

On February 5, 2010, Plaintiff was issued another misbehavior report, charging him with altering state property, giving false statements or information, and refusing a direct order. *See id.* at ¶ 33 and Exhibit "G." Defendant Black indicated on the misbehavior report, "per Hearing Lt. Goodman, this will be I/M Wilson's third time being cited for altered clothing. Also I/M has been given numerous direct orders from staff members not to wear hemmed pants that are hemmed incorrectly/illegally." *See id.* at Exhibit "G." During the hearing on this misbehavior report, Plaintiff objected to Defendant DeLuca's testimony as biased. *See id.* at ¶ 35. Plaintiff was found guilty on all charges and sentenced to fifteen-days keeplock confinement. *See id.* at Exhibit "H." Thereafter, on February 23, 2010, Plaintiff's FOIL request for a copy of the tape of the hearing was denied because the tape was "expunged/not available." *See id.* at Exhibit "L." On February

24, 2010, Defendant Kelly reversed and expunged this hearing disposition from Plaintiff's record. *See id.* at Exhibit "K."

As a result of the hearing determinations and resulting forty-five days combined keeplock confinement, Plaintiff missed seven religious services. *See id.* at ¶ 15. Plaintiff also alleges that, for two years, he volunteered as an inmate cook during the Muslim Ramadan Id festival. *See id.* at ¶ 18. Plaintiff had also worked in the kitchen and mess hall "as an assigned program without incident." *See id.* On or about July 30, 2010, Defendant Vladyka removed Plaintiff's name from the kitchen assignment list for the Ramadan festival. *See id.* at ¶ 20. Prior to this, Defendant Vladyka made comments about Plaintiff filing complaints and grievances against staff. *See id.* Defendant Vladyka claimed that Plaintiff was a security risk because of his behavior. *See id.* at ¶ 21.

**B.      Magistrate Judge Treece's June 22, 2012 Report-Recommendation and Order**

In his June 22, 2012 Report-Recommendation and Order, Magistrate Judge Treece recommended that the Court grant in part and deny in part Defendants' motion to dismiss. *See* Dkt. No. 29. Specifically, Magistrate Judge Treece recommended that the Court deny the motion as to Plaintiff's First Amendment retaliation claim against Defendant DeLuca, but grant the motion as to Plaintiff's First Amendment retaliation claims against the remaining Defendants. *See id.* at 9-12. Moreover, Magistrate Judge Treece recommended that the Court grant Defendants' motion to dismiss Plaintiff's First Amendment Free Exercise claims because Plaintiff failed to allege facts indicating that a substantial burden was placed on his religious beliefs and because Plaintiff failed to allege the personal involvement of any Defendant. *See id.* at 12-14. Magistrate Judge Treece also recommended that the Court dismiss Plaintiff's conspiracy claim against all

Defendants because he failed to plausibly allege an agreement between two or more actors.  *See id.* at 14-15.

Next, regarding Plaintiff's due process claims, Magistrate Judge Treece found that neither the fifteen nor the thirty day keeplock sentence imposed upon Plaintiff constituted a significant or atypical hardship.  *See id.* at 17-18.  Further, he found that "Plaintiff's inability to attend seven Muslim religious services, loss of his honor block cell status and loss of wages, which all occurred because he was held in keeplock confinement, do not constitute deprivation of a liberty interest."  *See id.* at 18.  As such, Magistrate Judge Treece recommended that the Court grant Defendants' motion to dismiss as to these claims.  *See id.*

Finally, Magistrate Judge Treece found that Defendant DeLuca is entitled to Eleventh Amendment immunity as to Plaintiff's claim for money damages against him in his official capacity.  *See id.* at 21.  However, Plaintiff's claims against Defendant DeLuca in his official capacity for injunctive and declaratory relief may proceed.  *See id.*

**C.    Plaintiff's objections to Magistrate Judge Treece's Report-Recommendation and Order**

Plaintiff raises five numbered objections to the Report-Recommendation and Order.  *See* Dkt. No. 31.  First, Plaintiff argues that Defendant Kelly should not be dismissed from this action because when he initially upheld the disciplinary hearing's outcome relating to the October 31, 2009 misbehavior report, he inaccurately stated that "the hearing was held in accordance with departmental directive # 4932 and established procedure" because it was later determined that there was no tape of the hearing as required by the directive.  *See id.* at ¶ 1.  Further, Plaintiff contends that Defendant Kelly's decision to reverse his initial decision to uphold the disciplinary hearing's outcome and expunge his record was because Plaintiff requested that the Superintendent

6

review the matter and this would allow Defendant Kelly to avoid "being censored by his supervisor." *See id.*

Second, Plaintiff objects to the recommended dismissal of Defendant Black because her "verbal harassment of [his] religious choice, and her prohibiting [him] from having pants hemmed, and her initiating the disciplinary proceeding (which lead to 15 days of confinement & the miss[ing] of (3) obligatory religious services) . . . violated [his] freedom of religion." *See id.* at ¶ 2. Plaintiff claims that in her misbehavior report, Defendant Black fails to provide the name of the official(s) who allegedly gave Plaintiff a direct order that was ignored or who had allegedly cited Plaintiff in the past for his behavior. *See id.*

Third, Plaintiff objects to the recommended dismissal of Defendant Zarnetski because he violated his due process right to a fair hearing by creating a "hostile and intimidating hearing environment" and because he failed to record the hearing, thereby preventing Plaintiff from exercising his right to a meaningful appeal. *See id.* at ¶ 3. Plaintiff claims that Defendant Zarnetski purposely failed to record the disciplinary hearing in an effort to deprive him of his rights and to retaliate against him. *See id.*

Fourth, Plaintiff objects to the recommended dismissal of Defendant Besson because Defendant Besson failed to provide him with a fair and adequate hearing. *See id.* at ¶ 4. Plaintiff claims that the evidence at the hearing was clearly contradictory and finding Plaintiff guilty of refusing a direct order but not guilty on the tampering with state property charge was inconsistent with the evidence. *See id.* As such, Plaintiff claims that Defendant Besson's "clear contradiction demonstrates pure vindictiveness." *See id.* Plaintiff asserts that Defendant Besson's vindictiveness is further demonstrated by the fact that his written disposition finding Plaintiff

guilty was drafted and signed by Defendant Besson on February 17, 2010, one day prior to the conclusion of the hearing. *See id.*

Finally, Plaintiff objects to the recommended dismissal of Defendant Vladyka. *See id.* at ¶ 5. Plaintiff claims that he "provided sufficient information within the complaint for a reasonable jury to determine if defendant Vladyka['s] actions w[ere] motivated by a retaliatory act, since defendant had refused to state or show his reasoning for declaring plaintiff a security concern and not allowing plaintiff to cook during the month of [R]amadan as [he] had done (2) consecutive years prior to filing of his grievances." *See id.* Plaintiff asserts that, before he began filing complaints against staff, there were no reports or rumors of security concerns from the staff at Great Meadow. *See id.*

## III. DISCUSSION

**A.    Standard of review**

### *1. Review of a report-recommendation and order*

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). When a party, however, files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal.  *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)).  A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority.  *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and former 6(e) of the Federal Rules of Civil Procedure).

### 2. Motion to dismiss standard

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically

attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted).  As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "'construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'"  *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quotation omitted).

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted).  Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

### 3. 42 U.S.C. § 1983

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983).  Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained.  *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)).  As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions.  *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation and other citations omitted).  "'[W]hen monetary damages are sought under §

1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.'" *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.)).  There is a sufficient showing of personal involvement of a defendant if (1) the defendant directly participated in the alleged constitutional deprivation; (2) the defendant is a supervisory official who failed to correct the wrong after learning about it through a report or appeal; (3) the defendant is a supervisory official who created a policy or custom under which the constitutional deprivation occurred, or allowed such a policy or custom to continue; or (4) the defendant is a supervisory official that was grossly negligent in managing subordinates who caused the constitutional deprivation.  *See id.* (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

**B.**     **First Amendment retaliation**

"Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quotation and other citation omitted).  "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show . . . '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim

of retaliation." *Davis*, 320 F.3d at 353 (internal quotation marks and citation omitted).  In making this determination, courts are to "bear in mind" that "prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (internal quotation marks and citations omitted).  The "test is objective, not subjective, and must be so, since the very commencement of a lawsuit would otherwise be dispositive on the issue of chilling." *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 447 (S.D.N.Y. 2006) (citations omitted).

### 1. Defendant Kelly

In his complaint, Plaintiff alleges that Defendant Kelly initially upheld the misbehavior report determination, but, on February 12, 2010, Defendant Kelly reversed the hearing determination and expunged Plaintiff's record because the hearing was not completely recorded, per established procedure.  *See* Dkt. No. 1 at Exhibits "C" & "E."  Similarly, Plaintiff alleges that Defendant Kelly reversed the second misbehavior report on February 21, 2010, again because of Defendant Besson's failure to record the disciplinary hearing.  *See id.* at ¶¶ 36-37 and Exhibits "K"-"L."  Plaintiff claims that Defendant Kelly's failure to reverse these determinations upon his first review of the matter demonstrates that Defendant Kelly retaliated against him and that he, "for the sole purpose of punitive retaliation[,] utilized and manipulated the Tier appeal process to maximize and extract the full penalty of sanctions[.]"  *See id.* at ¶ 52.[2]

---

[2] Although Plaintiff states that this is a retaliation claim against Defendant Kelly, the Court believes that this claim is more appropriately viewed as alleging a denial of due process. In light of Plaintiff's *pro se* status, the Court will review the merits of this claim as both a First Amendment retaliation claim and a Fourteenth Amendment due process claim.

Plaintiff's conclusory allegations against Defendant Kelly fail to allege a plausible claim of retaliation.  Plaintiff does not allege any facts giving rise to an inference of retaliation and fails to allege a causal connection between his letter to Superintendent LaValley – the protected activity – and Defendant Kelly's decision to initially affirm the appeal.  Moreover, upon review of Plaintiff's letter to Superintendent LaValley, it is clear that language was used that could reasonably be construed as threatening, thereby providing a reasonable basis for affirming the disciplinary hearing determination.  Finally, courts in this circuit have held that the fact that a deputy superintendent affirms a disciplinary hearing determination on appeal is, without more, insufficient to establish the personal involvement of that official.  *See Ramsey v. Goord*, No. 05-CV-47A, 2005 WL 2000144, *6 (W.D.N.Y. Aug. 13, 2005) (citations omitted).

Based on the foregoing, the Court finds that Magistrate Judge Treece correctly determined that Plaintiff has failed to allege facts plausibly suggesting that Defendant Kelly retaliated against him in violation of his First Amendment rights.

### 2. Defendant Black

Plaintiff alleges that Defendant Black filed a misbehavior report against him in retaliation for filing a "grievance/complaint," as well as for his religious beliefs.  *See* Dkt. No. 1 at ¶ 33. Plaintiff claims that Defendant Black did this "independently and/or at the behest of Goodman[.]" *See id.* at ¶ 55.

Again, Plaintiff's conclusory allegations are insufficient to state a plausible retaliation claim against Defendant Black.  Although Plaintiff claims that he filed grievances/complaints against prison officials, he fails to allege when he filed these grievances or even who the grievances were filed against.  Without such information or other non-conclusory allegations

14

regarding Defendant Black's conduct, Plaintiff has failed to adequately plead that there was a causal connection between the protected speech and the adverse action.  Further, even assuming that Plaintiff's October 25, 2009 letter to Superintendent LaValley is the "grievance/complaint" to which Plaintiff refers, Defendant Black is not discussed in the letter and Defendant Black did not file a misbehavior report against Plaintiff until February 5, 2010 – more than three months after Plaintiff's protected activity.  *See Allan v. Woods*, No. 9:05-CV-1280, 2008 WL 724240, *9 (N.D.N.Y. Mar. 17, 2008) (finding "no connection" when "almost three months" had elapsed from the filing of the grievance to the alleged retaliatory action).  Had Plaintiff's "grievance/complaint" been filed against Defendant Black, Plaintiff's retaliation claim against her may have been plausible.  *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citations omitted).  In the absence of such an allegation, however, Plaintiff has failed to allege a plausible retaliation claim against Defendant Black.

Based on the foregoing, the Court finds that Magistrate Judge Treece correctly determined that Plaintiff has failed to allege facts plausibly suggesting that Defendant Black retaliated against him in violation of his First Amendment rights.

### c. Defendant Zarnetski

In his complaint, Plaintiff alleges that Defendant Zarnetski was biased during his disciplinary hearing on November 4, 2009, and that he repeatedly called Plaintiff a "Nigger", "Stupid," and "Asshole."  *See* Dkt. No. 1 at ¶ 25.  Further, Plaintiff claims that Defendant Zarnetski improperly allowed Defendant Goodman to be present at the hearing, because Defendant Goodman was a direct party to the misbehavior report.  *See id.*

Again, Plaintiff has failed to allege any plausible connection between this alleged retaliatory action and any of Plaintiff's protected activities.  There are no allegations in the complaint to suggest that Defendant Zarnetski, acting as a hearing officer, found Plaintiff guilty of issuing a threat in retaliation for Plaintiff having filed a grievance.  *See Monroe v. Janes*, No. 9:06-CV-0859, 2008 WL 508905, *6 (N.D.N.Y. Feb. 21, 2008) (citation omitted).  Moreover, as discussed above, a review of Plaintiff's October 25, 2009 letter to Superintendent LaValley can reasonably be read as containing several threats.[3]

Based on the foregoing, the Court finds that Magistrate Judge Treece correctly determined that Plaintiff has failed to allege facts plausibly suggesting that Defendant Zarnetski retaliated against him in violation of his First Amendment rights.

### d. Defendant Besson

According to the complaint, Defendant Besson conducted the February 7, 2010 disciplinary hearing on Plaintiff's misbehavior report dated February 5, 2010.  *See* Dkt. No. 1 at ¶¶ 33-35.  In his fourth claim, Plaintiff claims that "Defendant Besson violated [his] clearly established right to due process for the sole purpose of punitive retaliation by violating established procedure as outlined in 7 NYCRR V, by not conducting a fair and impartial hearing as alleged[.]"  *See id.* at ¶ 51.

Magistrate Judge Treece correctly determined that, although Plaintiff has sufficiently alleged the first prong of his retaliation claim, Plaintiff has failed to allege that Defendant Besson

---

[3] The Court believes that, although this claim has been treated as a First Amendment retaliation claim, it is more appropriately analyzed as a Fourteenth Amendment due process claim.  In light of Plaintiff's *pro se* status, the Court will treat Plaintiff's allegations against Defendant Zarnetski as alleging claims under both the First and Fourteenth Amendments.

knew of his constitutionally protected activity, *i.e.*, the October 25, 2009 letter to Superintendent LaValley or any other unidentified grievance Plaintiff may have filed.  As such, Plaintiff has failed to plausibly allege that his protected activity was causally connected to any alleged adverse action taken by Defendant Besson.

Based on the foregoing, the Court finds that Magistrate Judge Treece correctly determined that Plaintiff has failed to allege facts plausibly suggesting that Defendant Besson retaliated against him in violation of his First Amendment rights.

### e. Defendant Vladyka

Plaintiff claims that Defendant Vladyka retaliated against him by having his "name removed from the kitchen Ramadan list due to the above . . . actions of filing grievances and complaints." *See* Dkt. No. 1 at ¶ 20.  Plaintiff further alleges that Defendant Vladyka, before removing him from his kitchen assignment, made comments regarding the grievances and complaints that he has filed against correctional staff at Great Meadow.  *See id.* at ¶¶ 20, 53.

Regarding Defendant Vladyka, Plaintiff has alleged that he filed grievances between October 2009 and August 2010, and that Defendant Vladyka commented on his grievance activities prior to unjustly removing him from his kitchen assignment on July 30, 2010.  Although somewhat vague, Plaintiff has adequately pled a First Amendment retaliation claim against Defendant Vladyka.  Unlike Plaintiff's allegations against the Defendants discussed above, here Plaintiff has alleged facts that can plausibly suggest that Defendant Vladyka's conduct – having Plaintiff removed from his kitchen assignment – was done in retaliation for Plaintiff filing grievances against corrections personnel.  The fact that Defendant Vladyka made comments to Plaintiff regarding the grievances he filed, regardless of whether Defendant Vladyka was named

17

as a party to any of the grievances, renders this claim not merely conceivable but plausible.  *See Bibbs v. Early*, 541 F.3d 267, 274 (5th Cir. 2008) (denying the defendants' motion for summary judgment as to the plaintiff's retaliation claim and holding that "the lapse of a month between the filing of his last grievance and the alleged retaliation does not foreclose a finding of a genuine issue of material fact on the causation question, particularly given the comments of the guards directly referring to inmates' filing of grievances").  Finally, as courts in this circuit have held, an inmates reassignment from a job or its termination can constitute adverse action necessary to support a claim of retaliation.  *See Vega v. Lareau*, No. 9:04-CV-0750, 2010 WL 2682307, *8 (N.D.N.Y. Mar. 16, 2010) (citing cases).

Based on the foregoing, the Court finds that Magistrate Judge Treece improperly determined that Plaintiff failed to state a First Amendment retaliation claim against Defendant Vladyka.  As such, the Court rejects Magistrate Judge Treece's Report-Recommendation and Order insofar as it recommends the dismissal of Plaintiff's First Amendment retaliation claim against Defendant Vladyka.

**C.**      **Freedom to practice religion**

The First Amendment to the United States Constitution guarantees the right to free exercise of religion.  *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors.  *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause" (citing *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804 (1974)).  Thus, for example, under accepted

free exercise jurisprudence, inmates are guaranteed the right to participate in congregate religious services under most circumstances.  *See, e.g., Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citing cases).

In the present matter, Plaintiff alleges the combined forty-five days that he spent under

The right of prison inmates to exercise their religious beliefs, however, is not absolute or unbridled, but instead is subject to valid penological concerns, including those relating to institutional security.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Salahuddin*, 993 F.2d at 308.  For example, a determination of whether an inmate's constitutional rights have been infringed by the refusal to permit his attendance at a religious service hinges upon the balancing of the inmate's First Amendment free exercise right against the institutional needs of officials tasked with the increasingly daunting task of operating prison facilities.  This determination is "one of reasonableness, taking into account whether the particular [act] affecting [the] constitutional right . . . is 'reasonably related to legitimate penological interests.'"  *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987)).

In the present matter, Plaintiff alleges the combined forty-five days that he spent under keeplock confinement caused him to be "restrained from Seven (7) combined religious services[.]"  *See* Dkt. No. 1 at ¶¶ 15, 47.  This allegation is insufficient to survive Defendants' motion to dismiss.  Notably, Plaintiff does not assert any factual allegations indicating what "combined religious services" he was not able to attend during the time in question or that he was not provided with an alternative method of practicing his religion.  *See Williams v. Weaver*, No. 9:03-CV-0912, 2006 WL 2794417, *5 (N.D.N.Y. Sept. 26, 2006) (citation omitted).  Further, Plaintiff has not pled that his attendance at congregate religious services was "cental or

important" to his religious beliefs.  *See Washington v. Chaboty*, No. 09 Civ. 9199, 2011 WL 102714, *8 (S.D.N.Y. Jan. 10, 2011).

Moreover, as Magistrate Judge Treece correctly found, Plaintiff has failed to allege that any of the Defendants were personally involved in causing him to miss the seven congregate religious services while he was sentenced to keeplock confinement.  *See Hernandez v. Keane*, 341 F.3d 145 (2d Cir. 2003) (citation omitted).  Although  Defendants Zarnetski and Besson rendered the keeplock confinement punishments that ultimately resulted in Plaintiff missing the seven religious services, Plaintiff has not alleged that any of the Defendants were responsible for the creation or implementation of a policy that caused him to miss religious services.  Since personal involvement in the alleged unconstitutional conduct is a prerequisite to recovery under section 1983, Plaintiff's failure to allege the personal involvement of any of the Defendants in this alleged conduct requires the Court to grant Defendants' motion to dismiss Plaintiff's First Amendment Free Exercise claims.  *See id.* (citation omitted).

Based on the foregoing, the Court finds that Magistrate Judge Treece correctly determined that Plaintiff has failed to allege facts plausibly suggesting that Defendants violated his First Amendment Free Exercise rights.

**D.      Due Process**

Plaintiff asserts that Defendants Besson and Zarnetski violated his due right to due process by not conducting fair and impartial disciplinary hearings.  *See* Dkt. No. 1 at ¶¶ 50-51.  Plaintiff claims that Defendant Besson and Zarnetski violated 7 N.Y.C.R.R. §§ 250.2 and 253, and N.Y. Corrections Law § 138, which outline procedures for disciplinary hearings.

The Fourteenth Amendment to the Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).

As a threshold matter, an inmate asserting a violation of his right to due process must first establish that he had a protected liberty interest in remaining free from the confinement that he challenges and, if so, that the defendant deprived the plaintiff of that liberty interest without due process. *See Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Thus, to show that a liberty interest is sufficient to invoke the protections of the Due Process Clause, a prisoner must establish both that his resulting confinement or restraint creates an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and that the state has enacted a regulation or statute which grants inmates a protected liberty interest in remaining free from that confinement or restraint. *Id.* at 484; *see also Frazier v. Coughlin*, 81

F.3d 313, 317 (2d Cir. 1996).  When determining whether a plaintiff possesses a liberty interest, district courts must examine the specific circumstances of confinement, including analysis of both the length and conditions of confinement.  *See Sealey*, 197 F.3d at 586; *Arce v. Walker*, 139 F.3d 329, 335–36 (2d Cir. 1998).

The fact that an inmate has been sentenced to serve forty-five days of keeplock confinement, without more, is insufficient to establish an atypical and significant deprivation.  In the present matter, Plaintiff was sentenced on two separate occasions to thirty days of keeplock confinement and fifteen days of keeplock confinement.  Plaintiff does not allege that his keeplock confinement was "atypical and significant" or that it affected the overall length of his criminal sentence.  *See Jermosen v. Cahill*, 159 F.3d 1347 (2d Cir. 1998) (citations omitted).  Even if the keeplock sentences are aggregated for a total of forty-five days, Plaintiff has failed to allege a sufficient liberty interest.  The Second Circuit has held that, "with respect to 'normal' SHU confinement, . . . a 101-day confinement does not meet the *Sandin* standard of atypicality."  *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation omitted).  Plaintiff's complaint fails to allege that his forty-five days of keeplock confinement was an atypical and significant hardship; and, therefore, the Court finds that Magistrate Judge Treece correctly determined that the Court should grant Defendants' motion to dismiss as to this claim.

**E.**     **Plaintiff's remaining claims**

In addition to the claims discussed above, Plaintiff's complaint also attempts to allege a section 1983 conspiracy claim against Defendants.  *See* Dkt. No. 1 at ¶¶ 48, 55.  In his response to Defendants' motion to dismiss, Plaintiff also asserts that Defendants Besson, Black, DeLuca, Goodman, Kelly, and Zarnetski all conspired to have him confined to his cell and removed from

honor block.  In his June 22, 2012 Report-Recommendation and Order, Magistrate Judge Treece recommended that the Court dismiss these claims because Plaintiff failed to failed to allege an agreement between the members of the alleged conspiracy to violate Plaintiff's rights.  *See* Dkt. No. 29 at 15.  Plaintiff did not object to this portion of Magistrate Judge Treece's Report-Recommendation and Order.

Having reviewed these claims and Magistrate Judge Treece's recommended disposition, the Court finds that Magistrate Judge Treece correctly determined that Plaintiff has failed to allege facts which plausibly suggest a conspiracy pursuant to section 1983.  Therefore, the Court grants Defendants' motion to dismiss Plaintiff's conspiracy claims.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, Magistrate Judge Treece's Report-Recommendation and Order and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Treece's June 22, 2012 Report-Recommendation and Order is **ADOPTED in part and REJECTED in part** for the reasons stated herein; and the Court further

**ORDERS** that Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Defendants DeLuca and Vladyka shall file an answer to Plaintiff's complaint in compliance with the Federal Rules of Civil Procedure; and the Court further

**ORDERS** that all further pretrial matters are referred to Magistrate Judge Treece; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 27, 2012
       Albany, New York

Mae A. D'Agostino
U.S. District Judge